Filed 12/18/23

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| PALOMAR HEALTH, | D080962 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. 37-2022-00017624-CU-MC-NC) |
| NATIONAL NURSES UNITED et al., | |
| Defendants and Appellants; | |
| PUBLIC EMPLOYMENT RELATIONS BOARD, | |
| Intervener and Respondent. | |

APPEAL from orders of the Superior Court of San Diego County, Robert P. Dahlquist, Judge. Reversed and remanded with directions.

California Nurses Association Legal Department, Nicole J. Daro, David B. Willhoite, Anthony J. Tucci, for Defendants and Appellants.

Fisher & Phillips, Warren L. Nelson, Brian L. Tremer, David E. Amaya, and Megan E. Walker for Plaintiff and Respondent Palomar Health.

Public Employment Relations Board, J. Felix De La Torre, Wendi L. Ross, Mary Weiss, Stephanie O'Hara for Intervener and Respondent Public Employment Relations Board.

This appeal arises from a labor dispute between Palomar Health, a public healthcare district, and the unions representing nurses and healthcare workers employed by Palomar Health. In 2021, the parties entered negotiations to renew their collective bargaining agreements (CBAs). As the bargaining continued without resolution, union organizers began a leafletting campaign outside Palomar Health's main hospital and also sought to meet with employees inside the hospital. In response, Palomar Health filed a complaint for trespass and unlawful picketing in San Diego Superior Court, seeking to ban the organizers from their facilities.

The day after the lawsuit was filed, the nurses' and healthcare workers' unions filed an unfair practice charge with the Public Employment Relations Board (PERB) asserting Palomar Health's attempts to ban their representatives from their facilities and the civil lawsuit violated the unions' rights under the Meyers-Milias-Brown Act, Government Code sections 3500 et seq.[1] (MMBA). In addition, the unions filed a demurrer in the civil suit, contending the trial court lacked subject matter jurisdiction, and a motion to strike the complaint under Code of Civil Procedure section 425.16.[2]

The trial court overruled the unions' demurrer and denied their motion to strike. The court found it could maintain jurisdiction of the state law claims because they did not pose a substantial danger of interference with PERB's adjudication of the unions' unfair practice charge. The trial court

---

[1] Subsequent undesignated statutory references are to the Government Code.

[2] Code of Civil Procedure section 425.16 is commonly referred to as the anti-SLAPP (strategic lawsuit against public participation) statute. (*Jarrow Formulas, Inc. v. LaMarche* (2003) 31 Cal.4th 728, 732, fn. 1.)

found the unions' anti-SLAPP motion was defective because it did not "identify allegations of protected activity in the complaint" or "the claims for relief supported by them, as required by *Baral v. Schnitt*." In addition, the court found that even if it were to assume the motion had identified protected activity, it would find that Palomar Health had shown a probability of prevailing on the merits of its claims.

On appeal from the denial of the anti-SLAPP motion, the unions argue the trial court erred with respect to both orders. They contend that the MMBA preempts Palomar Health's claims, which are premised on conduct that is arguably protected by the Act, and that PERB's issuance of a complaint divested the trial court of jurisdiction. In addition, the unions assert the conduct at issue—leafletting in front of the hospital and communicating with employees inside about the CBA negotiations and a potential strike—is protected under the anti-SLAPP statute and Palomar Health failed to meet its burden to show a probability of prevailing on its claims because it failed to satisfy Labor Code section 1138.1.

As we shall explain, we agree with the unions that Palomar Health's claims are preempted and, therefore, the trial court lacks jurisdiction over this dispute. Because we conclude the court lacks jurisdiction, we do not reach the trial court's ruling denying the unions' anti-SLAPP motion. The trial court's order overruling the demurrer is reversed and the matter is remanded with directions to enter an order sustaining the demurrer without leave to amend, and to dismiss the case on the grounds that it is subject to the exclusive jurisdiction of PERB.

FACTUAL AND PROCEDURAL BACKGROUND

Palomar Health is a public healthcare district, which is a subdivision of the State of California under Division 23 of the Health and Safety Code. It is

3

governed by a locally elected Board of Directors, responsible for both approving CBAs and declaring any impasse of negotiations between Palomar Health and the unions representing its employees. Palomar Health operates the Palomar Medical Center Escondido (PMCE), which is its primary hospital. The California Nurses Association (CNA) represents the registered nurses employed by Palomar Health. Caregivers and Healthcare Employees Union (CHEU) represents various other hospital employees. These two unions are defendants and appellants in this case.

Palomar Health and the unions have longstanding collective-bargaining relationships, and were parties to CBAs that expired on February 28, 2022, after several short-term extensions. The parties engaged in bargaining successor agreements between April 2021 and June 2022, when they entered into tentative memoranda of understanding for new CBAs.

With respect to accessing Palomar Health's facilities, the CBAs specified the unions could access them, including PMCE, for the purposes of "ensuring compliance with the collective bargaining agreement, adjusting grievances, and updating [the unions'] bulletin boards." The agreements required union representatives to notify security upon their arrival to a Palomar Health facility, to wear identification, and to refrain from interfering with employees' duties or facility operations or meeting with registered nurses during working time or in patient care areas. Prior to the present dispute, CNA and CHEU representatives regularly communicated with the employees they represent in non-work areas of Palomar Health's facilities, including outdoor spaces and cafeterias.

In April and May 2022, CNA union organizers were on PMCE's campus providing written information to employees about the ongoing union contract negotiations. The organizers set up tables inside the facility near a cafe on

4

the hospital's campus to provide information to employees and answer their questions. In addition, one or two union representatives stood near PMCE's entrance and provided leaflets to employees about a potential strike.

On April 5, 2022, an employee and labor relations manager for the hospital, Angela Thill, directed a hospital security guard to ask several organizers at a table near the cafe to relocate to the parking lot. Thill based this decision on Palomar Health's Solicitation and Distribution of Literature policy, which bans all solicitation on its properties. When the security guard told the organizers to move, they refused. Thill then approached the organizers, who continued to refuse to leave and told Thill that the policy she was relying on did not apply to union representatives.

After this incident, throughout April 2022, union organizers, either in pairs or individually, provided information to employees near PMCE's main entrance. At some point in April, the security guard contacted the police department, who advised they would not take action to remove union representatives without a court order.

On April 29, 2022, two union representatives set up a table in PMCE's cafeteria after the hospital denied their request to use conference space. On May 3, 2022, union representatives handing out information to employees at the main entrance were told to relocate to the facility's parking lot. The following day, Thill was alerted that union representatives were again meeting with employees inside the hospital near the cafe. Thill left her office at a separate facility and went to PMCE. She confronted the union representative that was present and demanded she leave, again asserting the representative was in violation of the hospital's Solicitation and Distribution of Literature policy.

5

After this confrontation, on May 10, 2022, Palomar Health filed the underlying complaint against CNA and CHEU seeking an injunction prohibiting trespassing and unlawful picketing by the union organizers. Palomar Health also filed an ex parte application for a temporary restraining order and a motion for an order to show cause why a preliminary injunction should not issue. On May 11, 2022, the unions filed their unfair practice charge (UPC) with PERB, asserting their activity at PMCE was protected by the MMBA and that Palomar Health's lawsuit constituted unlawful interference with their right of access to the employer's premises.[3]

On May 12, 2022, CNA and CHEU filed their opposition to the application and motion for injunctive relief, arguing, among other things, that the trial court lacked jurisdiction over Palomar Health's claims because they fell within the exclusive jurisdiction of PERB. The trial court conducted a hearing on the temporary restraining order application that day. The court denied the application without prejudice and set a hearing on Palomar Health's motion for an order to show cause.

Thereafter, the unions amended their UPC before PERB, again asserting that Palomar Health's lawsuit constituted unlawful interference with their right of access, and adding that the lawsuit was a unilateral change to, and enforcement of, an unreasonable local rule of access under the MMBA, and also that Palomar Health conducted unlawful surveillance. On June 1, 2022, PERB's Office of the General Counsel issued a complaint on the unions' UPC and noticed an informal hearing to mediate.

A hearing on Palomar Health's motion for injunctive relief in the civil lawsuit took place on May 23 and June 13, 2022. Palomar Health presented

---

[3]     On May 12, 2022, PERB's Office of the General Counsel issued an order expediting the processing of the unions' UPC.

6

the testimony of several witnesses, including the security guard involved in the confrontations with the union representatives, Thill, and its head of human resources. After the evidentiary hearing, the trial court denied Palomar Health's motion. The court concluded that Labor Code section 1138.1 applied to the dispute and found the provision had not been satisfied. Specifically, the court found Palomar Health had an adequate remedy to resolve the dispute through PERB, had not shown it would suffer irreparable injury absent an injunction, and had not established any unlawful act by the unions.[4]

Prior to the denial of Palomar Health's request for an injunction, the unions also filed their demurrer and anti-SLAPP motion. In the demurrer, the unions again argued the court lacked subject matter jurisdiction over the dispute, and that Palomar Health had failed to allege facts constituting any unlawful act in its causes of action for trespass and picketing. In its anti-SLAPP motion, the unions asserted that the conduct set forth in the complaint—handing out leaflets outside PMCE's main entrance and meeting with union members inside the hospital's non-working areas to discuss the CBA negotiations—is protected conduct under Code of Civil Procedure section 425.16, subdivision (e)(2), (3), and (4), and that Palomar Health could not show a probability of prevailing on the merits of the claims. Specifically, the unions asserted the claims could not succeed because the court lacked subject matter jurisdiction over the dispute, Palomar Health failed to state sufficient facts to support the claims, and also (as the trial court previously found) failed to satisfy the requirements of Labor Code section 1138.1.

---

[4] Before the hearing on Palomar Health's request for injunctive relief, PERB filed a motion to intervene in the proceeding, which the court granted on June 10, 2022.

7

In opposition to the demurrer, Palomar Health argued the court could maintain parallel jurisdiction over its claims because they did not allege a violation of the MMBA. Further, it asserted that its claim for trespass was viable because the union representatives had only limited rights to access its property "under explicit circumstances pursuant to the parties' agreements." Finally, Palomar Health argued Labor Code section 1138.1 did not apply because its hospital was not a public space and it alleged the union representatives blocked ingress and egress to the facility. In its opposition to the anti-SLAPP motion, Palomar Health argued the conduct at issue is not protected because it occurred in a nonpublic place and because a request for injunctive relief is not subject to the anti-SLAPP statute. In addition, Palomar Health argued its trespass claim had sufficient minimal merit to avoid dismissal, pointing primarily to the declarations of its employees.

After a hearing on the demurrer and motion to strike, the court issued its separate denial orders. With respect to the demurrer, the court found it could maintain jurisdiction over the claims because the "issues raised by [the] complaint are of 'local concern' and reserved for the typical 'police power' of the state courts." Further, the court found sufficient facts in the complaint to support the claims for trespass and unlawful picketing. In its anti-SLAPP ruling, the court found the unions' motion was deficient because it failed to specifically identify the conduct that was protected by Code of Civil Procedure section 425.16. In addition, it found that even if the conduct underlying the complaint was protected, Palomar Health had shown that its claims for trespass were sufficiently viable to survive the motion to strike. The court also reiterated its finding that it had jurisdiction over the case. CNA and CHEU then appealed from the court's order denying their anti-SLAPP motion.

8

Prior to the court's orders overruling the demurrer and denying the anti-SLAPP motion, PERB set evidentiary hearing dates before an Administrative Law Judge (ALJ) on PERB's General Counsel's complaint for August 11, 26, 31 and September 16 and 30, 2022. After the conclusion of those hearings, which were extended to seven days, and submission of post-hearing briefs by the parties in January 2023, the ALJ took the matter under submission.[5]

On May 12, 2023, the ALJ issued a proposed decision concluding "by a preponderance of the evidence [that] the Unions at all relevant times 'occupied or entered' Palomar premises by right of access under the MMBA, if not with Palomar's consent." The ALJ also found that Palomar Health's Solicitation and Distribution policy, as applied to the union representatives, violated the MMBA, and that this lawsuit was brought for an unlawful purpose or retaliatory motive. The proposed decision orders Palomar Health to cease and desist (1) "[p]rosecuting the cause of action for unlawful picketing" and (2) "seeking to have the Unions and their representatives enjoined from being present anywhere inside or outside the Hospital other than the employee parking lot."

---

[5] The unions have requested that we take judicial notice of the notice of formal hearing issued on September 12, 2022, portions of the transcript from a final day of hearing before the ALJ on November 8, 2022, and the proposed decision of the ALJ. The unions' request for judicial notice of these documents is granted. (See Evid. Code, § 452, subd. (c); *Rodas v. Spiegel* (2001) 87 Cal.App.4th 513, 518 ["We may take judicial notice of 'official acts of the legislative, executive, and judicial departments of the United States and of any state of the United States,'" which includes "records, reports and orders of administrative agencies."].) The unions' request that we take judicial notice of several other documents from the PERB proceeding is denied as unnecessary because the documents are already part of the appellate record.

At the time the unions submitted their reply brief in this court, the ALJ's proposed decision was awaiting a final determination of the matter by PERB.

DISCUSSION

The unions assert the trial court lacks subject matter jurisdiction to consider Palomar Health's complaint because under the MMBA, PERB has exclusive jurisdiction of the dispute. PERB also asserts it has exclusive jurisdiction over this matter and asks this court to dismiss the underlying lawsuit. In response, Palomar Health argues the trial court correctly determined it had jurisdiction over the case because the claims at issue cannot be addressed by PERB in the pending proceeding.[6]

I

*Legal Principles*

In order for the court to consider a plaintiff's claims, it must have subject matter jurisdiction over those claims. (*Lefebvre, supra,* 244 Cal.App.4th at p. 151.) " ' "The principle of 'subject matter jurisdiction'

---

[6] In a footnote in the procedural history section of its respondent's brief, Palomar Health states that an order overruling a demurrer is not appealable, but that "[n]evertheless, Respondents address the issue of preemption raised in" the demurrer. We agree with Palomar Health that in most cases an order overruling a demurrer cannot be challenged by appeal. (See *PGA West Residential Assn., Inc. v. Hulven Internat., Inc.* (2017) 14 Cal.App.5th 156, 168 ["An order overruling a demurrer is not directly appealable, but it may be reviewed on appeal from a final judgment."].) However, the issue of subject matter jurisdiction may be raised at any time during litigation and is properly addressed by this court on appeal from an order denying an anti-SLAPP motion. (See *Lefebvre v. Southern California Edison* (2016) 244 Cal.App.4th 143, 151–152 (*Lefebvre*) [" 'Subject matter jurisdiction is a fundamental requirement for judicial consideration of claims.' " Thus, " 'an alleged lack of subject matter jurisdiction must be addressed whenever it comes to a court's attention.' "].)

10

relates to the inherent authority of the court involved to deal with the case or matter before it." [Citation.] Thus, in the absence of subject matter jurisdiction, a trial court has no power "to hear or determine [the] case." [Citation.] And any judgment or order rendered by a court lacking subject matter jurisdiction is "void on its face." ' " (*Id.* at pp. 151–152.) Subject matter jurisdiction "ordinarily is addressed as a threshold matter, as its absence deprives the court of authority to adjudicate the merits of the dispute." (*Id.* at p. 152.) We review the question of whether the claims are preempted de novo. (*Hillhaven Oakland Nursing etc. Center v. Health Care Workers Union* (1996) 41 Cal.App.4th 846, 853 (*Hillhaven*).)

"In California, labor relations between most local public entities and their employees are governed by the [MMBA], which recognizes the right of public employees to bargain collectively with their employers over wages and other terms of employment. The administrative agency authorized to adjudicate unfair labor practice charges under the MMBA is California's Public Employment Relations Board (PERB)." (*City of San Jose v. Operating Engineers Local Union No. 3* (2010) 49 Cal.4th 597, 601 (*San Jose*).) "PERB is an expert, quasi-judicial administrative agency." (*City and County of San Francisco v. International Union of Operating Engineers, Local 39* (2007) 151 Cal.App.4th 938, 943 (*Local 39*).) Like the National Labor Relations Board (NLRB) in private sector labor disputes, the Legislature has granted PERB broad authority to interpret the MMBA to bring its "expertise and uniformity to the delicate task of stabilizing labor relations" in the public sector. (*San Diego Teachers Assn. v. Superior Court* (1979) 24 Cal.3d 1, 12.)

Because "PERB's primary function[] is to investigate and adjudicate charges of unfair labor practices," the agency has " 'exclusive jurisdiction' over alleged violations of the MMBA." (*Local 39, supra*, 151 Cal.App.4th at

11

p. 943.)  As the California Supreme Court has held, "PERB has exclusive initial jurisdiction over activities 'arguably protected or prohibited' by public employment labor law."[7]  (*San Jose, supra*, 49 Cal.4th at p. 606.)  In addition, "[s]ubject to certain exceptions, local public agencies and their employees must exhaust their administrative remedies under the MMBA by

[7]     The arguably protected and arguably prohibited test that governs the preemption determination was initially set forth in *San Diego Bldg. Trades Council v. Garmon* (1959) 359 U.S. 236 (*Garmon*).  In *Garmon*, the United States Supreme Court held that "[w]hen an activity is arguably subject to § 7 or § 8 of the [National Labor Relations] Act [(NRLA)], the States as well as the federal courts must defer to the exclusive competence of the [NLRB] if the danger of state interference with national policy is to be averted."  (*Garmon,* at p. 245.)  This test applies to preemption determinations under both federal and state labor laws.  (See *Hillhaven, supra,* 41 Cal.App.4th at p. 855 ["Cases following *Garmon* have clarified that the preemption issue as to both arguably prohibited and arguably protected conduct 'turns primarily on whether preemption is necessary to avoid conflicting adjudications which would interfere with the regulatory activity of the administrative board.' "].)  California has long looked to cases concerning the NRLA and the NRLB as persuasive authority in determining the scope of PERB's jurisdiction.  (See e.g. *San Diego Teachers Assn. v. Superior Court, supra*, 24 Cal.3d at p. 12 ["Though the rule as it relates to NLRB has been enunciated in the context of conflict between a federal agency and state courts, a like principle applies to parallel conflicts between California agencies and courts."]; *Fire Fighters Union v. City of Vallejo* (1974) 12 Cal.3d 608, 616 [when interpreting the MMBA, it is appropriate to take guidance from cases interpreting the NLRA]; and *Coachella Valley Mosquito & Vector Control Dist. v. California Public Employment Relations Bd.* (2005) 35 Cal.4th 1072, 1089–1090 (*Coachella*) [each California public sector labor relations statute must be interpreted with reference to the others in order to maintain "a coherent and harmonious system of public employment relations laws"].)

12

applying to PERB for relief before they can ask a court to intervene in a labor dispute."[8] (*Id.* at p. 601.)

"When an unfair practices charge is filed with PERB, it is assigned to an agent who must determine whether the facts alleged by the complainant state a prima facie case, and whether the charging party is capable of providing admissible evidence in support of the allegations. (Cal. Code Regs., tit. 8, § 32620, subd. (b).) Although the responding party must be apprised of

---

[8] By way of additional background, "[i]n 1961, the Legislature enacted the George Brown Act (Stats. 1961, ch. 1964, § 1, pp. 4141–4143, adding Gov. Code, § 3500 et seq.), which granted public employees in California the right to organize and have their representatives 'meet and confer' with their employers over wages and working conditions (Gov. Code, former § 3505). That right was expanded in 1968, when the Legislature enacted the MMBA (Gov. Code, §§ 3500–3510) authorizing public entities and labor representatives not only to confer but also to reach binding agreements on wages, hours, and working conditions. (Gov. Code, § 3505; *Coachella Valley Mosquito & Vector Control Dist. v. California Public Employment Relations Bd.* (2005) 35 Cal.4th 1072, 1083 (*Coachella Valley*).) At that time, PERB had not yet been created." (*San Jose, supra*, 49 Cal.4th at p. 603.)

"The history of PERB begins in 1975, when the Legislature enacted the Educational Employment Relations Act (EERA) (Gov. Code, §§ 3540–3549.3). That law established the Educational Employment Relations Board (EERB), which in 1977 was renamed the Public Employment Relations Board. (*Coachella Valley, supra*, 35 Cal.4th at p. 1085.) As an administrative agency, PERB was to adjudicate unfair labor practice charges under the EERA, and its jurisdiction was set forth in Government Code section 3541.5. That statute provided, and still provides, in part: 'The initial determination as to whether the charges of unfair practices are justified, and, if so, what remedy is necessary to effectuate the purposes of this chapter, shall be a matter within the *exclusive jurisdiction* of the board.' " (*San Jose, supra*, 49 Cal.4th at pp. 603–604.) Like conduct protected by the EERA, the Government Code gives PERB exclusive jurisdiction over unfair practices claims under the MMBA. (§ 3509; see *Local 39, supra*, 151 Cal.App.4th at p. 943 ["Effective July 1, 2001 ... the Legislature granted PERB 'exclusive jurisdiction' over alleged violations of the MMBA. ... That power is described in section 3509."].)

13

the allegations and be provided an opportunity to state its position (*id.*, § 32620, subd. (c)), the agent must issue a complaint if the allegations and evidence suffice to establish a prima facie case.  (*Id.*, § 32640, subd. (a).)" (*San Diego Municipal Employees Assn. v. Superior Court* (2012) 206 Cal.App.4th 1447, 1457 (*San Diego*).)

"When there is a dispute over the factual allegations or conflicting theories of law, '[i]t is not the function of the Board agent to judge the merits of the charging party's dispute.  [Citations.]  Disputed facts or conflicting theories of law should be resolved in other proceedings after a complaint has been issued.'  [Citation.]  It is the role of the ALJ appointed to hear the dispute to resolve these disputed issues." (*San Diego, supra*, 206 Cal.App.4th at p. 1457.)  "At the administrative hearing before the ALJ, the charging party and the respondent have the right to subpoena, call, examine and cross-examine witnesses, and to introduce documentary and other evidence.  (Cal. Code Regs., tit. 8, §§ 32180, 32170.)  The burden is on the charging party to prove its case by a preponderance of the evidence.  (*Id.*, § 32178.)" (*San Diego*, at p. 1457.)

After the administrative hearing, "[t]he ALJ must issue a written decision containing a statement of the facts, law and rationale for the decision.  ([Cal. Code Regs, tit. 8,] §§ 32215, 32350.)  Any party may file exceptions to the ALJ decision with PERB ([*Id.*], § 32300), and PERB may issue its own decision, or it may affirm, reverse or modify the ALJ's decision, or it may order further evidentiary proceedings.  (*Id.*, § 32320.)" (*San Diego, supra*, 206 Cal.App.4th at p. 1457.)  "[A] party aggrieved by a final decision or order of PERB in an unfair practice matter—except for a decision not to issue a complaint—may seek writ relief in the Court of Appeal.  When the writ petition is filed timely, the Court of Appeal has jurisdiction to grant 'any

14

temporary relief or restraining order' (Gov. Code, § 3509.5, subd. (b)) and to enforce, modify, or set aside PERB's decision or order." (*San Jose, supra*, 49 Cal.4th at p. 610, fn. 4.)

"In deciding whether something is an unfair labor practice, and whether PERB consequently has exclusive jurisdiction to hear a matter (Gov. Code, § 3563.2), we consider the underlying conduct on which the suit is based rather than a superficial reading of the pleadings." (*Teamsters Local 2010 v. Regents of University of California* (2019) 40 Cal.App.5th 659, 669.) "Sophistication of pleading actions is not the key to jurisdiction. Preemption exists 'to shield the system (of regulation of labor relations) from conflicting regulation of conduct. It is the conduct being regulated, not the formal description of governing legal standards, that is the proper focus of concern.' " (*Fresno Unified School Dist. v. National Education Assn.* (1981) 125 Cal.App.3d 259, 269.) The public employer " 'may not, through artful pleading, evade PERB's exclusive jurisdiction.' " (*Teamsters Local 2010,* at p. 669; see also *Local 39, supra*, 151 Cal.App.4th at p. 945 ["While it is true the ... complaint does not mention the MMBA, '[a]t this stage in the proceedings, where the only question is PERB's jurisdiction, what matters is whether the underlying conduct on which the suit is based—however described in the complaint—may fall within PERB's exclusive jurisdiction.' "].)

## II

### *Analysis*

We agree with the unions that the conduct that forms the basis for Palomar Health's civil claims is an arguably unfair labor practice under the MMBA subject to PERB's exclusive jurisdiction. Thus, the trial court's order overruling the unions' demurrer must be reversed.

15

In its demurrer order, the trial court relied on *Sears, Roebuck & Co. v. San Diego County Dist. Council of Carpenters* (1978) 436 U.S. 180, 182 (*Sears*) to find that Palomar Health's claims are not preempted. *Sears* addressed whether federal labor laws preempted a state law claim for trespass. In *Sears*, a carpentry union's representatives visited a Sears department store and discovered carpentry "work was being performed by men who had not been dispatched from the Union hiring hall." (*Id.* at p. 182.) The union then asked the store's manager to agree to hire union contractors, or to abide by the union's master labor agreement. The "manager stated he would consider the request, but never accepted or rejected it." (*Ibid.*) Two days later, the "union established picket lines on Sears' property." (*Ibid.*) "The picketing was peaceful and orderly." (*Ibid.*)

When the store's security personnel demanded the picketers leave, they refused and stated they would not leave unless forced by legal action. Sears then filed a trespass suit in state court and sought a temporary restraining order to prevent the union from picketing on its property. (*Sears, supra*, 436 U.S. at p. 183.) The trial court granted a preliminary injunction prohibiting peaceful picketing on Sears's property and the California Court of Appeal affirmed, holding that under the arguably protected or prohibited test established in *Garmon*, the case was not preempted. The California Supreme Court reversed, concluding that because the picketing was both arguably protected and arguably prohibited the case was preempted under the NLRA, title 29 of the United States Code sections 151–169.

The case then reached the United States Supreme Court, which again reversed, concluding the case was not preempted by federal law. Central to its holding, with respect to its consideration of whether the conduct was arguably prohibited by federal labor law, the court stated that the critical

16

inquiry "is not whether the State is enforcing a law relating specifically to labor relations or one of general application but whether the controversy presented to the state court is identical to ... or different from ... that which could have been, but was not, presented to the Labor Board.  For it is only in the former situation that a state court's exercise of jurisdiction necessarily involves a risk of interference with the unfair labor practice jurisdiction of the Board which the arguably prohibited branch of the *Garmon* doctrine was designed to avoid." (*Sears, supra*, 436 U.S. at p. 197.)

In the case before it, the trespass claim at issue was fundamentally different from the arguably prohibited case that "Sears might have presented to the Labor Board ....  If Sears had filed a charge, the federal issue would have been whether the picketing had a recognitional or work-reassignment objective; decision of that issue would have entailed relatively complex factual and legal determinations completely unrelated to the simple question whether a trespass had occurred.  [Fn. omitted.]  Conversely, in the state action, *Sears only challenged the location of the picketing*; whether the picketing had an objective proscribed by federal law was irrelevant to the state claim.  Accordingly, permitting the state court to adjudicate Sears' trespass claim would create no realistic risk of interference with the Labor Board's primary jurisdiction to enforce the statutory prohibition against unfair labor practices." (*Sears, supra*, 436 U.S. at p. 198, italics added.)

With respect to its consideration of whether the conduct underlying the case was arguably protected by federal labor law, and thus preempted, *Sears* held that because the union had not pursued a claim with the federal Labor Board, instead refusing to leave Sears's property unless it obtained a legal ruling requiring it to, the claim was not preempted. (*Sears, supra*, 436 U.S. at p. 202.)  Sears was left with three choices:  "permit the pickets to remain

17

on its property; forcefully evict the pickets; or seek the protection of the State's trespass laws.  Since the Union's conduct violated state law, Sears legitimately rejected the first option.  Since the second option involved a risk of violence, Sears surely had the right—perhaps even the duty—to reject it.  Only by proceeding in state court, therefore, could Sears obtain an orderly resolution of the question whether the Union had a federal right to remain on its property." (*Ibid*.)  In other words, Sears had "no acceptable method of invoking, or inducing the Union to invoke, the jurisdiction of the Board." (*Ibid*.)

The Supreme Court recognized, however, that its conclusion did not "necessarily foreclose the possibility that pre-emption may be appropriate" in a state trespass case. (*Sears, supra*, 436 U.S. at p. 203.)  The court noted that "[t]o allow the exercise of state jurisdiction in certain contexts might create a significant risk of misinterpretation of federal law and the consequent prohibition of protected conduct.  In those circumstances, it might be reasonable to infer that Congress preferred the costs inherent in a jurisdictional hiatus to the frustration of national labor policy which might accompany the exercise of state jurisdiction.  Thus, the acceptability of 'arguable protection' as a justification for pre-emption in a given class of cases is, at least in part, a function of the strength of the argument that § 7 [of the NLRA] does in fact protect the disputed conduct." (*Ibid*.)

The court explained that the critical inquiry for purposes of determining whether the employer's trespassing claim is preempted by section 7 of the NLRA is the strength of the union's argument that its conduct is protected by labor law. (*Sears, supra*, 436 U.S. at p. 204.)  If that argument is particularly strong, then preemption is appropriate to avoid the risk of conflicting adjudication by the state judicial forum.  If that argument

18

is weak, which the court concluded was the case with respect to the trespass by the picketers in the case before it, the state retains jurisdiction to determine the contours of its trespass law despite the risk it will reach a different result than the labor board would have reached. (*Id*. at pp. 206–207.)

Of particular note here, *Sears* stated that, "[w]hile there does exist some risk that state courts will on occasion enjoin a trespass that the Board would have protected, the significance of this risk is minimized by the fact that in the cases in which the argument in favor of protection is the strongest, the union is likely to invoke the Board's jurisdiction and thereby avoid the state forum. Whatever risk of an erroneous state-court adjudication does exist is outweighed by the anomalous consequence of a rule which would deny the employer access to any forum in which to litigate either the trespass issue or the protection issue in those cases in which the disputed conduct is least likely to be protected by § 7." (*Sears, supra*, 436 U.S. at pp. 206–207; see *id*. at p. 207 ["If there is a strong argument that the trespass is protected in a particular case, a union can be expected to respond to an employer demand to depart by filing an unfair labor practice charge; the protection question would then be decided by the agency experienced in accommodating the § 7 rights of unions and the property rights of employers in the context of a labor dispute."].)

The conduct that forms the basis for Palomar Health's trespass claim fits neatly within the preemption paradigm described by *Sears* for conduct that is arguably protected by labor law. As soon as Palomar Health filed its state law claims for unlawful trespass and picketing, the unions invoked the jurisdiction of PERB. They filed their UPC the next day, asking PERB to determine whether the conduct was protected by this state's regulation of

19

Palomar Health as a public employer. Unlike the conduct of the union in *Sears*, which related to the actions of a private employer regulated by federal labor law, the CNA and CHEU organizers asserted their acts of meeting with members on Palomar Health's property and leafletting outside the front entrance of PMCE was not trespassory because the conduct was protected both by their prior CBAs and by the MMBA.

Specifically, the unions here have shown (both in the underlying proceeding and the proceeding pending before PERB) that the CBAs provided a right to access to union organizers, and have asserted that right extends to the conduct at issue in this case. The CBAs state that up to two organizers "shall be granted access to Palomar Health facilities during hours of operation for the purposes of ensuring compliance with the collective bargaining agreement, adjusting grievances, and updating [their] bulletin boards." The unions argue this language encompasses "adjusting grievances through bargaining and strikes."

Further, the unions correctly assert that under the MMBA, both employees and non-employee union representatives have a presumptive right of access to the public employer's premises. Section 3507, subdivision (a) states that "A public agency may adopt reasonable rules and regulations after consultation in good faith with representatives of a recognized employee organization or organizations for the administration of employer-employee relations under this chapter. The rules and regulations may include provisions for ... (6) Access of employee organization officers and representatives to work locations." Based on section 3507, as well as corresponding rights of access contained in the EERA, the Higher Education Employer-Employee Relations Act (§ 3560 et seq.), and the NLRA, PERB has concluded "the MMBA grants a recognized employee organization a right of

20

access to a public agency's facilities for the purpose of communicating with employees subject to reasonable regulation by the public agency." (*County of Riverside* (2012) PERB Dec. No. 2233-M, p. 8 [36 PERC ¶ 113]; see also *County of Tulare* (2020) PERB Dec. No. 2697-M, p. 18 [44 PERC ¶ 141] ["The MMBA affords both employee and non-employee representatives of employee organizations access to areas in which employees work, subject to reasonable employer regulation."]; *County of Orange* (2018) PERB Dec. No. 2611-M, p. 3, [43 PERC ¶ 101] [same]; *Omnitrans* (2009) PERB Dec. No. 2030-M, p. 16 [33 PERC ¶ 91] [same].) In addition, PERB has held the right of access includes non-disruptive picketing, (*San Marcos Unified School District* (2003) PERB Dec. No. 1508, p. 27 [27 PERC ¶ 27]) and "leafleting to advertise a labor dispute." (*Regents of the University of California* (2012) PERB Dec. No. 2300-H, pp. 3 & 16, [37 PERC ¶ 141].)

Given this right of access enjoyed by the unions, coupled with the fact the unions immediately filed their UPC with PERB, we conclude the risk of interference with PERB's jurisdiction is much greater than the risk of interference with the NLRB's jurisdiction at issue in *Sears*. Unlike the private employer in *Sears*, whose property was subject to state trespass law, CNA and CHEU have a presumptive right of access to their members' workplace under the MMBA. (*County of Riverside* (2012) PERB Dec. No. 2233-M, p. 4 [36 PERC ¶ 113].) Thus, the conduct at issue, i.e. the alleged trespass by CNA and CHEU representatives within PMCE and leafletting at the hospital's entrance, will be adjudicated by PERB as either protected or unprotected by the parties' agreement and the MMBA. This is the identical question presented before the trial court in this litigation. There is unquestionably a risk of conflicting decisions in these two competing

forums.[9]  Because the questions are the same, we agree with the unions that PERB has exclusive jurisdiction of this dispute.

In addition to *Sears*, the trial court relied on (and Palomar Health now points to) *Kaplan's Fruit & Produce Co. v. Superior Court* (1979) 26 Cal.3d 60 (*Kaplan's*) to find the claims are not preempted.  In *Kaplan's*, the California Supreme Court held that the Agricultural Labor Relations Act (§ 1140 et seq.) (ALRA) did not preempt the superior court's "jurisdiction to enjoin obstruction of access" by picketers.  (*Kaplan's,* at p. 67.)  The case considered the employer's lawsuit for an injunction that was based exclusively on picketing that blocked customer access to its facility.  (*Ibid.*)

The employer sought an injunction in state court only after it filed a charge of unfair labor practice with the Agricultural Labor Relations Board (ALRB).  Critically, the ALRB declined to issue a complaint after its investigation "revealed that 'the … [Union] did *not* conduct mass picketing or block access to the Kaplan stand" and the ALRB's general counsel found the picketing "did not violate any provision of the ALRA."  (*Kaplan's, supra,* 26 Cal.3d at p. 67.)  Thus, as in *Sears*, the employer's only recourse was an action in state court.  In overturning the lower court's decisions finding the case was preempted, the California Supreme Court held that the conduct at issue was not arguably protected or arguably prohibited by the ALRA, and thus there was no basis for preemption.  (*Kaplan's,* at p. 75.)  Because "blockage of customer access is not in itself an unfair labor practice under the

---

9     Indeed, as discussed, the ALJ in the PERB proceeding has issued a proposed decision concluding that this lawsuit and Palomar Health's enforcement of its Solicitation and Distribution policy violate the MMBA's unreasonable access provision, Section 3507, subdivision (a), and that this lawsuit constitutes unlawful interference with its employees' rights under the MMBA.  This ruling, if upheld by PERB and any subsequent writ proceeding, would establish that the union organizers were lawfully on PMCE's campus.

ALRA," the court concluded "local court decisions enjoining obstructions to access do not threaten significant interference with [ALRB] adjudications." (*Ibid*.)

Kaplan's is distinguishable from this case. As an initial matter, it concerns a private employer regulated by the ALRA, which is not subject to the same access rights afforded by the MMBA. Further, unlike *Kaplan's*, where the ALRB found the conduct at issue was not subject to its regulation, here, PERB filed a claim after the union submitted their UPC and expedited the handling of that claim. As discussed, the claim is based on the same conduct at issue in this state court litigation, creating a direct risk of conflicting results. (See *Sears, supra*, 436 U.S. at p. 206 ["in the cases in which the argument in favor of protection is the strongest, the union is likely to invoke the Board's jurisdiction and thereby avoid the state forum"].) And, as the unions point out, the trial court has now twice concluded Palomar Health submitted insufficient evidence to support its assertion that the union organizers were leafletting outside the entrance to PMCE in a manner that blocked access to any patron or employee of the hospital. The trial court also concluded that Palomar Health has an adequate remedy to resolve the dispute through PERB. These trial court findings further support the conclusion that the conduct at issue is arguably protected by the MMBA, preempting Palomar Health's claims.

This case bears a resemblance to *Hillhaven, supra*, 41 Cal.App.4th 846. In *Hillhaven*, "25 to 30 representatives and agents of" a union for the employees of a nursing and rehabilitation facility entered the facility. (*Id*. at p. 850.) Over the course of a half hour, they "distribute[d] flyers to employees, residents and their families and spread throughout the facility to meet with employees." (*Ibid*.) Several witnesses reported that the union

23

organizers were disruptive, and that they upset and frightened residents. (*Id*. at pp. 850–852.) A large group also "gathered 'outside in front of the building on the sidewalk, chanting, yelling, waving their arms and cheering.'" (*Id*. at p. 851.) "The demonstrators refused to leave the building until they were ordered out by the police." (*Ibid*.)

The day after the demonstration, the facility sought an injunction and damages in the trial court. The court issued a temporary restraining order the day the facility filed its complaint. (*Hillhaven, supra*, 41 Cal.App.4th at p. 852.) While a hearing was pending on the preliminary injunction, the facility filed an unfair practice charge with the NLRB, asserting the union had violated the facility's employees' rights under section 7 of the NLRA by engaging in coercive and intimidating conduct. (*Ibid*.) Following an investigation, the NLRB determined the charge was meritorious and issued a complaint and notice of hearing against the union. (*Ibid*.) The facility and union then settled the NLRB action, with the union agreeing to refrain from the type of conduct that prompted the litigation, including entering the facility without permission. The settlement agreement also contained a provision indicating that it did not resolve the pending litigation in the superior court. (*Id*. at p. 853.) Before the settlement was reached, the trial court entered a preliminary injunction, which the union appealed. (*Id*. at pp. 852–853.)

The Court of Appeal agreed with the union that the state court litigation was preempted by federal law. The court rejected the facility's claim its trespass cause of action fell into an exception to the general rule of preemption because "the state has a compelling interest in protecting its people from threatened violence, trespass and breaches of the peace." (*Hillhaven, supra*, 41 Cal.App.4th at p. 857.) After noting there was no

24

evidence of violence or a threat of violence, damage to property, or blockage of access, the court held that once the employer placed the matter before the NLRB and it issued its complaint, the matter was preempted. (*Id*. at p. 858.) Critically, while the issues in the state and NLRB cases were not identical, the complaint issued by the NLRB alleged the same underlying behavior by the union, i.e. that the union interfered with the facility's operations and " 'restrained and coerced' employees in the exercise of their rights under section 7 of the NLRA." (*Ibid*.)

The same is true in this case. The complaint issued by PERB sets forth the same conduct by union organizers that forms the basis of Palomar Health's claims for trespass and unlawful picketing in this case. Rather than frame the conduct as unlawful based on California state laws, as Palomar Health does in its complaint, the PERB complaint asserts that the union's conduct is protected by the CBAs between the parties and by the MMBA.[10] As in *Hillhaven*, PERB's exercise of jurisdiction over the events that form the basis for the civil lawsuit filed by Palomar Health, creates "a real and substantial opportunity for conflict. Disparate factual determinations regarding what actually occurred during the incident[s in question] are a real possibility." (*Hillhaven, supra*, 41 Cal.App.4th at pp. 859–860.) The law at issue in the civil case is intertwined with that governing the PERB case. By its lawsuit, Palomar Health has tasked the trial court with determining whether the union organizers' conduct—the same conduct at issue in the PERB proceeding—is protected, and thus not trespassory, under the CBAs or

---

10     In addition, the PERB complaint asserts that Palomar Health unlawfully surveilled union organizers while they were at its facilities and that Palomar Health retaliated against employees, who were also union organizers, after they had spoken about the ongoing labor dispute in April 2022 at an Escondido City Council meeting.

the MMBA. Like *Hillhaven*, "there is a core identity of issues presented to the labor board and the court, making conflict even more likely." (*Id*. at p. 860.)

Finally, Palomar Health argues its civil claims are exempt from preemption because they are only peripheral to the labor dispute between the parties, and because trespass is "so deeply rooted in local feeling and responsibility that, in the absence of compelling congressional direction," we should not infer the Legislature intended to deprive the courts of jurisdiction. We disagree. In this case, as discussed, the determination of whether the union organizers' conduct was trespassory is inextricably intertwined with the determination of whether the conduct was protected by the CBAs and/or the MMBA. This determination falls squarely within PERB's jurisdiction under the MMBA, and is central to the parties' dispute.

Further, Palomar Health's assertion that its unlawful picketing claim is based on obstruction of access and thus falls outside the purview of PERB's jurisdiction is not supported by the record. The trial court twice concluded that there was insufficient evidence to support Palomar Health's argument that the union organizers prevented anyone from accessing the hospital. Rather, after considering extensive evidence presented by Palomar Health at the preliminary injunction hearing, the court concluded that Palomar Health had not established the union organizers blocked the entrance to the hospital or otherwise impeded any patient, visitor, or employee from access. We agree with the unions that Palomar Health has not shown that preemption is inappropriate because its trespass and unlawful picketing claims touch "interests so deeply rooted in local feeling and responsibility that" the judicial

26

forum must consider them.[11] (*Doe v. Google, Inc.* (2020) 54 Cal.App.5th 948, 957.)

Resolving the parties' dispute necessarily requires a determination of the unions' right to access PMCE, or whether Palomar Health had a right to prohibit access. Contrary to Palomar Health's assertion, the controversy is the same in both the civil claims it asserts and those asserted by PERB's General Counsel. As PERB states in its brief, "[s]ince the same controversy is before PERB, a substantial danger exists that a judicial decision would interfere" with PERB's primary jurisdiction over this labor dispute. Thus, Palomar Health's claims for trespass and unlawful picketing are preempted and subject to PERB's exclusive jurisdiction.[12]

## DISPOSITION

The court's order overruling the unions' demurrer is reversed. On remand, the trial court is directed to issue an order sustaining the demurrer

---

[11] We also note that the local concern doctrine on which Palomar Health relies "applies primarily when the subject of the action is peripheral to the labor dispute [citation], or when a judicial decision does not present a substantial danger of interfering with labor decisions of an administrative agency." (*San Jose, supra*, 49 Cal.4th at p. 608.) Neither condition exists here.

[12] Because we conclude that Palomar Health's claims are preempted and the trial court lacked subject matter jurisdiction over the litigation, it is unnecessary to reach the question of whether the trial court's subsequent order denying the unions' anti-SLAPP motion was error. Because the court lacked jurisdiction over the case, the order denying the motion is " 'void on its face.' " (*Varian Medical Systems, Inc. v. Delfino* (2005) 35 Cal.4th 180, 196.) "We decline to review an issue that will have no effect on the parties." (*Kaiser Foundation Health Plan, Inc. v. Superior Court* (2012) 203 Cal.App.4th 696, 715; see also Civ. Code, § 3532 ["The law neither does nor requires idle acts."]; *Garibaldi v. Daly City* (1943) 61 Cal.App.2d 514, 517 ["An appellate court will not determine a question which will have no effect upon the status of the parties."].)

without leave to amend and dismissing the case on the grounds that Palomar Health's claims are preempted and subject to the exclusive jurisdiction of the Public Employees Relations Board.  Costs of appeal are awarded to appellants.

McCONNELL, P. J.

WE CONCUR:

DO, J.

BUCHANAN, J.